Marc Windtberg (SBN 024802)
mw@wlawaz.com
**WINDTBERG LAW, PLC**
7600 North 15th Street, Suite 150
Phoenix, AZ 85020
Telephone: (602) 753-0706

Farhad Novian (SBN 118129) (*pro hac vice pending*)
farhad@novianlaw.com
Joon Song (SBN 281391) (*pro hac vice pending*)
joons@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA  90067
Telephone: (310) 553-1222
Facsimile: (310) 553-0222

Attorneys for Plaintiffs
Paragon Technology & Development, Inc.
and Gatsby Enterprises, Inc.

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Paragon Technology & Development, Inc., a Delaware corporation; Gatsby Enterprises, Inc., a California corporation, | Case No.: |
| Plaintiffs, | **COMPLAINT** |
| | **(Jury Trial Demanded)** |
| vs. | |
| Jeff Swisher and Jane Doe Swisher, husband and wife; DOES 1 – 10, | |
| Defendants. | |

Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. ("Paragon")

and GATSBY ENTERPRISES, INC. ("Gatsby," collectively with Paragon, "Plaintiffs")

- 1 -

1  hereby complain against Defendants JEFF SWISHER ("Jeff Swisher"), JANE DOE

2  SWISHER, and DOES 1-10 as follows.

3  ## NATURE OF THIS ACTION

4      1.     This action arises from Jeff Swisher's clandestine efforts to misappropriate

5  highly confidential information relating to Paragon's business operations.  From late 2016

6  to November 2018, Jeff Swisher was employed by Paragon, which entrusted him with

7  uniquely sensitive confidential and proprietary information for the sole purpose of

8  benefiting Paragon.  The Parties entered into an employment agreement in which Jeff

9  Swisher expressly acknowledged the confidential nature of such information and agreed

10  to refrain from divulging or using such information for any improper purpose.  Such

11  agreements notwithstanding, Jeff Swisher deceptively and intentionally exposed

12  Paragon's confidential information to third parties, established his own business to

13  directly compete with Paragon, and brazenly solicited Paragon's clients and employees

14  in furtherance of his self-serving and unlawful objectives.  On information and belief, Jeff

15  Swisher did so in collaboration with a cabal of individuals who sought to wrest control of

16  Paragon away from its owners by using any underhanded means possible.

17  ## THE PARTIES

18      2.     Plaintiff Paragon is a corporation incorporated under the laws of Delaware

19  and qualified to do business in California, with its principal place of business in Los

20  Angeles County, California.

21      3.     Plaintiff Gatsby is a corporation incorporated under the laws of California,

22  with its principal place of business in Los Angeles County, California.

23      4.     Jeff Swisher is currently a citizen of the state of Arizona, residing in

24  Maricopa County, Arizona.

25      5.     Plaintiffs are unaware of the true names and capacities of the defendants

26  named herein as Jane Doe Swisher and DOES 1 through 10, inclusive, whether individual,

corporate, associates, or otherwise and therefore sue defendants by fictitious names. Plaintiffs will seek leave of court to amend this Complaint to set forth the true names and capacities of said defendants if and when the same has been ascertained.  Plaintiffs are informed and believe and thereon allege that DOES 1 through 10, inclusive, and each of them, are responsible in some manner for the wrongful acts, occurrences, and/or omissions alleged herein and for the damages caused to Plaintiffs.

6. Plaintiffs are informed and believe, and thereon alleges, that each of the defendants designated as a DOE is responsible in some manner for the events and happenings herein referred to and caused damages thereby to Plaintiffs as herein alleged. Plaintiffs are informed and believe, and on such information and belief allege, that each defendant herein, in addition to acting for himself, itself and/or on his, her, or its behalf, individually, is, and at all relevant times was, acting as the agent, servant, employee and/or representative of and with the knowledge, consent and permission of each of the remaining defendants and within the course, scope and authority of said agency, service, employment and/or representation.  Plaintiffs are further informed and believe, and on such information and belief allege, that the acts and conduct of each such defendant was fully ratified by each of the remaining defendants herein.  Jeff Swisher and the defendants designated as DOES 1-10 shall be referred to collectively as "Defendants" where appropriate.

7. Defendants Jeff Swisher and Jane Doe Swisher are, upon information and belief, husband and wife.  All actions taken by Jeff Swisher related hereto were taken to benefit the marital community of Jeff Swisher and Jane Doe Swisher.

## JURISDICTION AND VENUE

8. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

1   9.      Venue is proper under 28 U.S.C § 1391(b)(2) because a substantial part of

2   the events or omissions giving rise to the claims occurred in this district.   In the

3   alternative, venue is also proper under 28 U.S.C. § 1391(b)(3), as Jeff Swisher is subject

4   to the court's personal jurisdiction with respect to this action.  Finally, venue is also proper

5   due to a venue clause in the operative employment agreement.

6                        **BACKGROUND ALLEGATIONS**

7   10.     Paragon and Gatsby operate a platform for online adult content that helps

8   thousands of independent contractor content creators earn livelihoods.  Gatsby is a wholly

9   owned subsidiary of Paragon.

10  11.     Jeff Swisher started working for Plaintiffs in or about November 2016.

11  12.     Jeff Swisher became acquainted with Todd Belfer ("Todd Belfer"), who is

12  a partner in To Be Limited Partnership ("TBL"), an Arizona limited partnership, along

13  with his father Harvey Belfer ("Harvey Belfer"), his mother Sandra H. Belfer, and his

14  sister Beth Belfer.

15  13.     TBL loaned funds to Plaintiffs starting April 2014 at usurious interest rates,

16  sometimes as high as 30%.  TBL, through Harvey Belfer, had also made a series of threats

17  against Plaintiffs and Jude Hudson, warning Mr. Hudson of physical harm in case

18  Plaintiffs failed to make any loan repayments.  Indeed, TBL engaged in a practice of

19  obtaining equity in Paragon as additional consideration for its loans, or else as a

20  "sweetener" after loans were made.

21  14.     Plaintiffs moved to Los Angeles in or about October 2017.  Jeff Swisher

22  and a fellow employee, James Power ("James Power"), moved with Paragon to Los

23  Angeles in or about Spring 2018.  Jeff Swisher and James Power were both former

24  Marines and friends before they started working at Paragon, and they rented an apartment

25  together in Los Angeles during this time.  James Power had introduced Jeff Swisher to

26  Jude Hudson and to Paragon.

15.     While both Jeff Swisher and James Power had been good employees who did their work in a competent and timely manner, James Power started to adopt more of an aggressive, abrasive attitude toward the Hudsons and other of Plaintiffs' employees. This unprofessional and demeaning behavior directly led to one Paragon employee's quitting, and led to other employees threatening to quit.

16.     Around this time, TBL had started to summon Mr. Hudson back to Arizona more frequently for business meetings.  TBL had also introduced Mr. Hudson to Robert Lunny ("Robert Lunny"), who was billed as a consummate financial/business wizard who could assist Plaintiffs with the financial and operational aspects of their business.  TBL started to relentlessly promote Robert Lunny to Plaintiffs and demanding he be installed as chief financial officer and chief operating officer of Paragon.

17.     By October 2018, James Power had become extremely disruptive, and his aggressive behavior culminated in a verbal altercation with Mr. Hudson at the workplace that month.

18.     At or about 4:19 pm on Wednesday, October 31, 2018, Jeff Swisher and James Power announced that they would be moving back to Arizona on or about Saturday, November 3, 2018 to work remotely for Plaintiffs.  They told Mr. Hudson that they were "doing what is best for the company."  Such an action was never contemplated nor approved by the Hudsons—the owners, officers, and directors of Plaintiffs, and Jeff Swisher and James Power's employers.

19.     Indeed, Jeff Swisher and James Power had *already made all arrangements* to move back to Arizona by the time they announced to Plaintiffs they would be working remotely: for instance, they had hired a moving truck and had already packed up their apartment, and had given Plaintiffs notice on Wednesday, October 31, 2018 so Plaintiffs would not have enough time to respond.  On information and belief, these actions indicate that Jeff Swisher and James Power had given notice of their intent to break their lease at

1    their apartment weeks or months in advance.

2        20.    Mr. Hudson was alarmed at their behavior, and Paragon retained counsel to

3    look into Jeff Swisher and James Power's actions.

4        21.    Mr. Hudson's alarm was, unfortunately, not misplaced.  Plaintiffs learned

5    that Jeff Swisher and James Power had set up an Arizona limited liability company in

6    October 2018, unbeknownst to Plaintiffs, called "4th Power Technology LLC" (Arizona

7    Entity ID Number 1912085) engaged in "professional, scientific, and technical services."

8        22.    Jeff Swisher and James Power were key employees for Plaintiffs.  Jeff

9    Swisher was handling artist payouts, and James Power was handling operations for

10   Plaintiffs.  Therefore, they exerted outsize influence and power on Plaintiffs.  Should they

11   have refused, for any reason, to obey the Hudsons, they could have crippled Paragon by

12   ensuring the business came to a standstill and Paragon's artists were not paid, which

13   would have completely destroyed Paragon's reputation in the industry.

14       23.    On information and belief, Jeff Swisher, James Power, Todd Belfer, Harvey

15   Belfer, and Robert Lunny coordinated with each other to wrest control of Paragon from

16   the Hudsons.  Jeff Swisher and James Power were key to this scheme because they had

17   insider information by virtue of their employment with Plaintiffs: information they passed

18   on to this group.

19       24.    On information and belief, Jeff Swisher used his position of responsibility

20   and trust in Paragon to take confidential information (such as but not limited to financials,

21   business plans, and customer lists) which he then passed on to his co-conspirators.

22       25.    Todd Belfer and Harvey Belfer, through the promissory notes and equity

23   held by TBL, had imposed draconian loan terms and interest, which made it extremely

24   difficult for Plaintiffs to repay their loans and increased the possibility of a default.  Such

25   default would entitle TBL to take over the company.  Jeff Swisher and James Power had

26   the control to stop payments and cripple the company so that it would not be able to make

its loan payments to TBL.  Robert Lunny would be able to come in and "flip" the company, positioning it for a quick sale.  Jeff Swisher and James Power would then run a carbon copy of Plaintiffs' business using 4th Power Technology LLC in Arizona, using Plaintiffs' trade secrets, processes, and goodwill.

26.     Fortunately for Plaintiffs, the conspiracists mistimed their plot to take over the company because they failed to consider or appreciate the fact that Plaintiffs still had loyal and competent employees who could run operations and make artist payouts.  The conspiracists also assumed Plaintiffs would not put all the dots together and identify Jeff Swisher and James Power as "moles" or "inside agents."

27.     Jeff Swisher and James Power were terminated for cause in the nick of time, on or about November 2, 2018.

### FIRST  CLAIM FOR RELIEF:

### BREACH OF CONTRACT (EMPLOYMENT AGREEMENT)

### (BY PARAGON AGAINST JEFF SWISHER AND DOES 1 – 10)

28.     Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

29.     Paragon and Jeff Swisher entered into a written contract—the Jeff Swisher Employment Contract (the "Employment Agreement")—effective September 14, 2018.

30.     In connection with, and for the sole purpose of limited use during Jeff Swisher's employment, Paragon provided Jeff Swisher with certain highly confidential and proprietary information expressly defined under the Employment Agreement.

31.     Upon information and belief, Jeff Swisher deliberately divulged, disclosed, revealed, misappropriated, reported and/or used this confidential information in an attempt to harm Paragon and take over the company with his co-conspirators.

32.     Specifically, upon information and belief, Jeff Swisher divulged such confidential information to third-party individuals and competitors including, but not

limited to, Todd Belfer, Harvey Belfer, Robert Lunny, and TBL.

33.     Though his conduct as set forth above, Jeff Swisher materially breached Section 2 of the Employment Agreement, which expressly required that he keep all confidential information absolutely confidential and protect its release to any unauthorized third parties.

34.     In addition, Jeff Swisher materially breached Section 3 of the Employment Agreement, which prohibited him, during the term of his employment with Paragon and for twelve months after the expiration of that term, from engaging in any business that is in competition with Paragon.   Jeff Swisher's breach of this section is evidenced, for instance, by Jeff Swisher being a member of 4th Power Technology LLC in Arizona and collaborating with James Power, Harvey Belfer, Todd Belfer, Robert Lunny, and TBL.

35.     On information and belief, Jeff Swisher also breached Section 4 of the Employment Agreement by soliciting and inducing other employees—for instance, James Power—to leave Paragon's employ, and by taking steps to interfere with or disrupt Paragon's relationship with its other employees and its independent contractor artists.

36.     Paragon performed all of its obligations under the Employment Agreement.

37.     Jeff Swisher was not excused from any performance or his obligations under the Employment Agreement.

38.     As a proximate result of Jeff Swisher's material breaches of the Employment Agreement, Paragon has suffered damages and continues to suffer damages in an amount to be determined according to proof at trial but no less than $1,000,000.00.

39.     In light of Jeff Swisher's material breaches, Paragon continues to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, in addition to damages, Paragon is entitled to specific performance, including without limitation, an injunction precluding the continued use of Paragon's proprietary and confidential information and trade secrets disclosed to Jeff Swisher while he was employed by

Paragon.

**SECOND CLAIM FOR RELIEF:**

**MISAPPROPRIATION OF TRADE SECRETS UNDER ARIZONA UNIFORM**

**TRADE SECRETS ACT, ARIZONA REVISED STATUTES § 44-401,** *ET SEQ.*

**(BY PLAINTIFFS AGAINST JEFF SWISHER AND DOES 1 – 10)**

40.     Plaintiffs reallege and incorporate by reference the prior and subsequent paragraphs of this Complaint.

41.     Jeff Swisher misappropriated—by acquisition, use, and unlawful disclosure of Plaintiffs' confidential and proprietary information, including trade secrets—in violation of Arizona Revised Statutes section 44-401, *et seq.*

42.     Plaintiffs have invested substantial time, money, and other resources to develop its trade secrets and proprietary information. Such trade secrets and proprietary information ("Trade Secrets") include, without limitation, price lists, product costs, margins, pricing structure, marketing plans, promotional campaigns, business plans(s), financial projections, lead generation techniques, contractors, and other information disclosed or submitted, orally, in writing, or by any other media, to the recipient.  These Trade Secrets have never been disclosed to the public.

43.     These Trade Secrets consist of information not generally known to the public and have independent economic value: for instance, business development and expansion considerations and plans, revenue and performance information, business histories for Paragon's users and contractors, and the preferences and needs of each user, among other protected information.

44.     The Trade Secrets are directly related to the Paragon's business.

45.     The Trade Secrets are of significant value to Paragon because they are not publicly known.   Jeff Swisher only acquired Paragon's trade secrets and proprietary information because of Jeff Swisher's prior employment and relationship with Paragon.

46. Upon information and belief, Jeff Swisher used and disclosed the Trade Secrets improperly and wrongfully, in violation of Jeff Swisher's contractual obligations to Paragon under the Employment Agreement.

47. Plaintiffs took reasonable efforts to maintain the confidentiality of the Trade Secrets by, for instance, repeatedly reinforcing the proprietary and secret nature of its inventions, research, product or service ideas or plans, business plans, services, development plans, customer lists, licenses, among other information. In particular, the Trade Secrets were only disclosed to employees, such as James Power, who needed access to the information in order to further Plaintiffs' business. In addition, Paragon required anyone given access to Trade Secrets to sign various agreements containing confidentiality provisions, such as the Employment Agreement.

48. Nevertheless, at some point in 2018, prior to Jeff Swisher's termination of employment, Jeff Swisher misappropriated the Trade Secrets and proprietary information by, among other things, using the confidential information to solicit Plaintiffs' employees, create a competing business, and assist his co-conspirators to take over the business.

49. Jeff Swisher's misappropriation of the Trade Secrets as detailed above was committed without Plaintiffs' knowledge or permission and contrary to various agreements.

50. Upon information and belief, Defendants have been unjustly enriched by Jeff Swisher's misappropriation of the Trade Secrets by, for instance, using this information to compete with Paragon and to create a scheme to wrest control of the company away from the Hudsons.

51. Jeff Swisher's actions constitute misappropriation of trade secrets under Arizona Revised Statutes section 44-401, *et seq.*

52. Plaintiffs have suffered, and will continue to suffer, irreparable harm as a result of Jeff Swisher's ongoing misappropriation of their Trade Secrets.

53.    Jeff Swisher's use and acquisition of the Trade Secrets were a substantial factor in causing harm to Plaintiffs and causing Defendants to be unjustly enriched.

54.    Plaintiffs have suffered significant monetary damages resulting from the theft and misappropriation of its trade secrets and proprietary information in an amount to be quantified at trial, but no less than $1,000,000.00.

55.    Plaintiffs allege that in so doing and committing the despicable acts set forth above, Defendants acted with fraud, malice, ill will, and with the intent and design of harming Plaintiffs, for which Plaintiffs are entitled to an award of exemplary damages against Defendants pursuant to Arizona Revised Statutes section 44-403 in the amount of twice the actual damages awarded, as well as attorneys' fees under Section 44-404.

**PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for relief and judgment against Defendants, as follows:

1.    For compensatory damages, in an amount to be proven at trial but above the jurisdictional limit.

2.    For special damages, in an amount to be proven at trial.

3.    For exemplary damages, in an amount to be proven at trial.

4.    For injunctive relief enjoining Jeff Swisher from continuing to breach his contracts with Plaintiffs, using or otherwise exploiting Plaintiffs' confidential information, or otherwise engaging in any further acts of unfair competition.

5.    For attorneys' fees.

6.    For interest.

7.    For costs of suit.

8.    For such other relief as the Court may deem just and appropriate.

1

DATED:  March 4, 2021          **WINDTBERG LAW, PLC**

2

By:     /s/ Marc Windtberg
MARC WINDTBERG

3

7600 N. 15th Street, Suite 150
Phoenix, AZ 85020

4

5

FARHAD NOVIAN
JOON SONG

6

**NOVIAN & NOVIAN, LLP**

7

1801 Century Park East, Suite 1201
Los Angeles, CA  90067

8

9

Attorneys for Plaintiffs PARAGON
TECHNOLOGY & DEVELOPMENT,

10

INC.   and GATSBY ENTERPRISES,
INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## DEMAND FOR JURY TRIAL

Plaintiffs PARAGON TECHNOLOGY & DEVELOPMENT, INC. and GATSBY

ENTERPRISES, INC. hereby demand a jury trial in this action.

Dated this 4th day of March, 2021.

**WINDTBERG LAW, PLC**

By /s/ Marc Windtberg
   Marc Windtberg
   7600 N. 15th Street, Suite 150
   Phoenix, Arizona 85020

FARHAD NOVIAN
JOON SONG
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA 90067

Attorneys for Plaintiffs PARAGON
TECHNOLOGY & DEVELOPMENT,
INC. and GATSBY ENTERPRISES,
INC.

- 1 -